IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGELA D. B,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 21-cv-419-DWD |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423 and 42 U.S.C. § 1383(c). For the reasons discussed below, the final agency decision is due to be affirmed.

**Procedural History**

Plaintiff applied for DIB and SSI alleging a disability onset date of April 30, 2019. After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application on December 22, 2020 (Tr. 30). The Appeals Council denied Plaintiff's request for review on March 22, 2021 (Tr. 8), making the ALJ's decision the final agency decision subject to judicial review. *See* 20 C.F.R. § 404.981. Plaintiff exhausted administrative remedies and filed a timely complaint with the Court seeking judicial review.

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

## Applicable Legal Standards

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.  An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. § 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. *See Craft v. Astrue*, 539 F.3d 668, 647, n.6 (7th Cir. 2008).  For convenience, most citations herein are to the DIB regulations.

Here, the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 203 L. Ed. 2d 504 (Apr. 1, 2019) (internal citations omitted). In reviewing for "substantial evidence," the Court takes the entire administrative record into consideration but does <u>not</u> "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. At step one, she determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date (Tr. 19). At step two, the ALJ found that Plaintiff has the following severe impairments: posttraumatic stress disorder (PTSD), anxiety, major depressive disorder, and psychogenic hyperventilation syndrome, functional seizures, and conversion disorder with attacks or seizures (Tr. 19). The ALJ also found that Plaintiff has the nonsevere impairments of lower back arthritis, asthma, respiratory

infection and rash, urinary tract infection, obesity, and cannabis use disorder (Tr. 19-20). The ALJ concluded that Plaintiff had moderate limitations in the functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 22-23). At step three, the ALJ found that Plaintiff does not have any impairments or combination of impairments that meet any of the listings set forth in the Listing of Impairments (Tr. 20). The ALJ specifically considered Listings 11.02, 12.04, 12.06, 12.07, and 12.15 (Tr. 21-23).

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following limitations:

> she cannot climb ladders, ropes, or scaffolds and cannot work at unprotected heights, around moving mechanical parts or other such hazards. The claimant is limited to performing simple, routine tasks and can perform work with production expectations, but the work must not be at a fast pace such as an assembly line. She is further limited to work that requires only occasional changes in the work setting, and she can have no more than occasional interaction with co-workers and supervisors. The claimant cannot perform work that requires interaction with the public and she cannot engage in tasks that involve handling conflict, such as help desk or customer service desk.

(Tr. 23-24).

At step four, the ALJ concluded that Plaintiff has no past relevant work (Tr. 28). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to find that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy based on Plaintiff's age, education, work experience,

and residual functional capacity (Tr. 28-30). The VE specifically testified that Plaintiff could perform the requirements of occupations such as laundry worker, tumbler operator, and binder, which exist in significant numbers in the national economy (Tr. 29). Accordingly, the ALJ found that Plaintiff was not disabled (Tr. 30).

## The Evidentiary Record

Plaintiff only challenges the ALJ's Step Five finding (Doc. 15). While the Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order, the following summary of the record is directed to the points raised by Plaintiff on review.

Plaintiff was born in 1992 and was 26 on the alleged onset date (Tr. 28, 47). Plaintiff has a high school diploma (Tr. 47). Plaintiff has two children and lives with her grandmother (Tr. 47). Plaintiff's grandmother assists Plaintiff with her children and completing paperwork (Tr. 52). Plaintiff alleged that she is unable to work because of her seizures and anxiety attacks ((Tr. 48, 186). Plaintiff was represented by an attorney at the evidentiary hearing held on September 24, 2020 (Tr. 79).

Plaintiff testified that she had to stop working because work caused her seizures to become more frequent (Tr. 48). When Plaintiff was working, she would have a seizure every other day, but when she stopped working, she only has one seizure per week (Tr. 48). Plaintiff testified that her seizures are triggered by stress and flashbacks from previous trauma (Tr. 48-49). Plaintiff described her seizures as causing her hands and face to go numb, and sometimes they cause her hands to lock up or she loses consciousness (Tr. 50). The seizures last a couple of seconds to a couple of minutes (Tr.

5

50). When Plaintiff comes out of her seizure she must lay down and take a nap because of exhaustion (Tr. 50).

Denise Waddell, a vocational expert (VE) also testified at the hearing. Plaintiff stipulated to the Ms. Waddell's qualifications to testify as a vocational expect at the hearing based on her resume describing her professional qualifications (Tr. 52-53). Ms. Waddell's resume provides that she has a Bachelor of Social Work, with specialized training in vocational evaluation (Tr. 229). The resume also describes her professional experience as a career consultant providing vocational evaluations, job seeking skills training, and placement services (Tr. 229-230). Ms. Waddell's professional experience in the career consulting and vocational industry starting in 1981 (Tr. 229). Her resume also indicated that she has previously served as a vocational expert in SSA proceedings (Tr. 229-230).

The ALJ asked the VE a hypothetical based on an individual of Plaintiff's age and education, with:

> No exertional limitations, no climbing of ladders, ropes, or scaffolds. No work at unprotected heights, around moving mechanical parts or other such hazards. The individual is limited to performing simple routine tasks and can perform work with production expectations, but the work must not be at a fast pace such as an assembly line, limited to work that requires only occasional changes in the work setting. Can have occasional interaction with coworkers and supervisors. No interaction with the public. And no work that would involve handling conflicts such as working at a help desk or customer service desk.

(Tr. 53). The VE testified that this hypothetical individual would be able to perform medium exertional level, unskilled, specific vocation preparation (SVP 2) occupations, such as: Laundry Worker (DOT #361.684-014), with approximately 97,500 jobs nationally;

6

Tumbler operator (DOT #369.685-034), with approximately 87,500 jobs nationally; and Binder (DOT #652.685-014), with approximately 44,200 jobs nationally (Tr. 54).

The ALJ asked the VE whether her testimony was consistent with the Dictionary of Occupational Titles (DOT) (Tr. 54).  The VE testified that her testimony was consistent with the DOT, and that she "also supplemented testimony with my work experience in regards to the limitations involving fast paced production work, contact with coworkers, supervisors, the public, and handling and jobs in which you handle conflict as all the information is absent from the DOT and SCO."  (Tr. 54).

The ALJ then asked the VE whether there would be work available for the hypothetical individual if the individual would be off task for 20% of the workday or absent two or more days per month (Tr. 54).  The VE testified that there would be no work for that individual (Tr. 54).  The VE then confirmed that her testimony was consistent with the DOT, but also supplemented with her work experience since that information is absent from the DOT and SCO (Tr. 54-55).

Plaintiff's attorney asked the VE two questions.  First, she asked whether there would be work available for the ALJ's hypothetical individual if the individual required supervision on an hourly basis to check to make sure the person is on task, safe, and/or repeat instructions (Tr. 55).  The VE testified that the individual would not be able to maintain competitive employment (Tr. 55).

Plaintiff's attorney then asked the VE what sources she used for the job incident data she provided in response to the ALJ's first hypothetical (Tr. 55).  The VE testified that her job resources included "Department of Census, Bureau of Labor Statistics,

7

individual state workforce sites, Department of Labor, business directories, chambers of commerce." (Tr. 55). Plaintiff's attorney asked no further questions and declined to add anything else to the record before the hearing ended (Tr. 55).

On October 8, 2020, Plaintiff's attorney sent correspondence to the ALJ summarizing her arguments and asking that the evidentiary record be closed (Tr. 233). In this letter, Plaintiff's attorney objected to the VE's testimony related to job incidence data, stating:

> I object to vocational expert Denise Waddell's testimony as it relates to the job incidence data. She cited the "Department of Labor" and "Bureau of Labor Statistics" as the source for job incidence data. I object, because the answer cannot be accurate.
>
> Both the Department of Labor and Bureau of Labor Statistics stopped using the DOT decades ago. "The DOT is no longer in use by the Bureau of Labor Statistics, and we do regard it as obsolete since much of the information contained in the most recent version is based on research conducted at least two decades ago." 2007 Sommers letter.
>
> The VE's cited source for job incidence data is an inaccurate citation-there is no such source. I object to this testimony being considered as reliable evidence. It cannot support a step-five finding, and the Commissioner has failed to carry the burden of production of reliable vocational evidence.

(Tr. 233-234). Plaintiff's attorney also included a copy of the two-page November 2007 Letter she cited from the U.S. Department of Labor addressing the use of the Dictionary of Occupational Titles (Tr. 235-236).

The ALJ overruled Plaintiff's objection, reasoning:

> Objections raised by the claimant's representative subsequent to the hearing, (Exhibits 15E), are overruled. I take notice that the vocational expert never stated or indicated reliance *only* upon the Department of Labor and the Bureau of Labor Statistics in determining the number of jobs available. Instead, the vocational expert testified that she also relied upon

8

> the Department of Census, individual state work force sites, business directories, and chamber of commerce. Moreover, there was no objection to these sources at the hearing. Furthermore, one of the jobs provided by the vocational expert is laundry worker. Job Browser Pro and other resources support the finding that this work is widely available in the national economy. The availability of the job of laundry worker alone is enough to support a Step 5 denial.

(Tr. 29) (emphasis in original).

The ALJ also found that the VE's testimony was consistent with the DOT (Tr. 29), and further stated:

> [T]o the extent the vocational expert's testimony concerned matters not addressed in the *D.O.T.*, as well as job incidence numbers, the vocational expert offered a valid and well-reasoned basis for her opinions on those matters. I therefore accept the vocational expert's testimony in accordance with SSR 00-4p. To any extent [the VE's] testimony varied from the *D.O.T.*, it was based on her experience and expertise. I therefore accept the vocational expert's testimony in accordance with SSR 00-4p.

(Tr. 29).

## **Analysis**

Plaintiff makes two arguments in favor of remand related only to the ALJ's Step Five finding (Doc. 15).  First, she argues that the vocational expert's opinion lacked a reliable basis for job incidence data.  Second, Plaintiff argues that the ALJ erred in overruling Plaintiff's post-hearing objection to the job incidence data by rending a lay vocational opinion and reviewing Job Browser Pro data not in the record.  The Court addresses these arguments below.

However, first the Court addresses the record as it relates to Plaintiff's residual functional capacity.  *See, e.g.*, *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986) ("In reviewing the decision of the Secretary, … the district court [is] obliged to review all the

9

evidence contained in the record."). Plaintiff does not challenge the ALJ's findings about her residual functional capacity or the impact of her symptoms on her functioning. Nevertheless, the Court has reviewed the record and finds that the ALJ accurately and thoroughly discussed the relevant hearing testimony, reports of activities, and medical evidence in her decision. As such, the Court finds that substantial evidence exists to support the ALJ's decision as it relates to her discussion of Plaintiff's residual functional capacity and the impact of Plaintiff's symptoms on her functioning.

Turning to the ALJ's Step Five finding, Plaintiff argues that the vocational expert's opinion lacked a reliable basis for job incidence data (Doc. 15). At step five, the Commissioner bears the burden of establishing that the claimant can perform work which "exists in significant numbers in the national economy." *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (quoting 20 C.F.R § 404.1560(c)(2)). The Commissioner satisfies this burden if it can show that the ALJ's conclusion in this regard is supported by substantial evidence. *See Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). Substantial evidence is "'more than a mere scintilla,' and means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 203 L. Ed. 2d 504 (citing *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "Information 'without a basis in evidence having rational probative force' cannot satisfy this standard." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

A VE's testimony alone may constitute substantial evidence to support the ALJ's findings at step five; however, that testimony must be reliable. *See Biestek*, 203 L. Ed. 2d 504 ("expert testimony can sometimes surmount [the substantial-evidence bar] absent

underlying data", although that "testimony would be even better—more reliable and probative"—if supporting data is produced); *see also Overman*, 546 F.3d at 464. A "finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Chavez*, 895 F.3d at 968. Evidence is not substantial if the "testimony has been conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Nevertheless, the Federal Rules of Evidence do not strictly apply in administrative proceedings, and "the measuring stick for assessing the reliability of expert testimony in this administrative setting is not Federal Rule of Evidence 702." *Chavez*, 895 F.3d at 968.

The agency bears the burden of determining the reliability of the VE's job-number estimates.  *See Dawn L. C. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00626-GCS, 2021 WL 4488421, at *7 (S.D. Ill. Sept. 24, 2021) (citing *Chavez*, 895 F.3d at 970). Although the Seventh Circuit requires VE testimony be predicated on reliable methods, it also recognizes that "[e]stablishing the reliability of a job-number estimate does not require meeting an overly exacting standard." *Chavez*, 895 F.3d at 968. In the context of job-number estimates, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." *Id.* (citing *Donahue*, 279 F.3d at 446). However, the "law recognizes and respects the impossibility of acquiring precise data necessary to tally with certainty the number of jobs in a specific category at any given time; the substantial evidence standard is meant to afford the agency with the flexibility sufficient for approaching the approximation required at step five." *Dawn L. C.*, 2021 WL 4488421, at *6 (citing *Chavez*, 895 F.3d at 968–989).

11

An ALJ cannot simply accept a VE's statements because they are not otherwise contradicted. See *Dawn L. C.*, 2021 WL 4488421, at *7 (citing *Chavez*, 895 F.3d at 970) (noting that accepting a VE's statements as reliable because the claimant posed no objection to the data "effectively and impermissible" shifts the burden from the agency to the plaintiff). "However, applicants are still expected to 'probe the strength of testimony by asking an expert about ... her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions.'" *Id.* (citing *Biestek*, 203 L. Ed. 2d 504). Further, "even without significant testing, a factfinder may conclude that testimony has sufficient indicia of reliability to support a conclusion about whether an applicant could find work." *Biestek*, 203 L. Ed. 2d 504.

Here, Plaintiff's attorney questioned the VE about her sources at the evidentiary hearing (Tr. 55). The VE stated that her job resources included "Department of Census, Bureau of Labor Statistics, individual state workforce sites, Department of Labor, business directories, [and] chambers of commerce." (Tr. 55). After the VE provided her sources, Plaintiff's attorney conducted no further inquiry into the sources or the VE's testimony, and further raised no objections at the hearing (Tr. 55). Instead, she submitted a post-hearing objection to the source data stating that the "Department of Labor" and "Bureau of Labor Statistics" "cannot be accurate" as a source because the Department of Labor and Bureau of Labor Statistics no longer use the DOT (Tr. 233-234). The ALJ overruled this objection noting that the VE never stated or indicated reliance only upon the Department of Labor and the Bureau of Labor Statistics (Tr. 29). The ALJ further observed that Plaintiff's attorney made no objection to these, or any of the VE's other

12

sources, at the hearing (Tr. 29).

Plaintiff now complains generally that the VE's testimony concerning her sources was vague and falls short of "indicia of reliability." (Doc. 15). However, Plaintiff only raised objections to the VE's use of the "Department of Labor" and "Bureau of Labor Statistics" as sources (Tr. 55, 233-234). She did not, however, as the ALJ noted, object to the VE's other sources from the Department of Census, individual state workforce sites, business directories, chambers of commerce. (Tr. 55). These sources are commonly invoked by vocational experts. *See, e.g., Biestek*, 203 L. Ed. 2d 504 (citing Social Security Ruling, SSR 00-4p) ("When offering testimony, the experts may invoke not only publicly available sources but 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'"); *Liskowitz v. Astrue*, 559 F.3d 736, 743–744 (7th Cir. 2009) (citing 20 C.F.R. § 1566(d)) (ALJs are required to take administrative notice of government sources and other publications).

Moreover, Plaintiff did not question the reliability of these additional sources or the VE's methodology. Accordingly, without further inquiry from Plaintiff into the VE's sources and methodology, the ALJ had no reason to believe that this data might be unreliable. Rather, all other indications suggested that the VE's data provided an adequate foundation for her estimates. Indeed, the ALJ found that the VE's testimony was "valid and well-reasoned", and to the extent the testimony varied from the DOT, "it was based on her experience and expertise." (Tr. 29). This experience and expertise included nearly four-decades of experience in career consulting, vocational evaluations, and job placement services, in addition to her prior experience as a VE in SSA proceedings

(Tr. 229-230).

In *Chavez*, 895 F.3d at 970, the Seventh Circuit made clear that proving the reliability of the VE's data is the ALJ's burden; however, this did not create "new obligations at step five." *Coyier v. Saul*, 860 F. App'x 426, 428 (7th Cir. 2021) (citing *Chavez*, 895 F.3d at 970). Instead, the ALJ is "entitled to accept an expert's testimony that was uncontradicted and 'otherwise proper.'" *Coyier*, 860 F. App'x at 428 (internal citations omitted); *see also Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020) (explaining that an ALJ may properly accept a VE's uncontradicted testimony absent obvious internal conflicts). Here, the ALJ was entitled to accept the VE's testimony and reliance on the uncontradicted job incidence data. Moreover, reviewing the VE's extensive, and uncontested, experience and credentials, her testimony alone could constitute substantial evidence to support the ALJ's findings at step five. *See Biestek*, 203 L. Ed. 2d 504 ("expert testimony can sometimes surmount [the substantial-evidence bar] absent underlying data").

As the substantial-evidence standard "is not high", *Biestek*, 203 L. Ed. 2d 504, and the ALJ was entitled to accept the portions of the VE's testimony that were "uncontradicted" and "otherwise proper," the Court finds no error in the ALJ's reliance on the VE's opinion or the VE's reliance on the uncontradicted sources. Thus, substantial evidence exists to support the ALJ's step-five finding. Further, because the Court finds that the ALJ's reliance on the VE's uncontradicted sources provides substantial evidence for her step-five finding, the Court declines to consider Plaintiff's additional argument concerning the ALJ's alternative findings which were based on the ALJ's personal review

14

of Job Browser Pro data "and other resources" conducted after the evidentiary hearing.

## Conclusion

For these reasons, and after careful review of the record as a whole, the Court is convinced that the ALJ's findings are supported by substantial evidence. The final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**SO ORDERED.**

Dated: September 28, 2022

_____
DAVID W. DUGAN
United States District Judge